```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
MARIA GIELAROWSKI FOR CHESTER
GIELAROWSKI (deceased),

                        Plaintiff,            **MEMORANDUM & ORDER**
        -against-
                                               Civil Action No. 16-3560 (DRH)
NANCY A. BERRYHILL,[1] ACTING
COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
-------------------------------------------------------X
```

**APPEARANCES:**

**For Plaintiff:**

Klee, Woolf, Goldman, & Filpi, L.L.P.
350 Willis Avenue
Mineola, NY 11501
By:    Jonathan R. Klee, Esq.

**For Defendant:**

Bridget M. Rohde
Acting United States Attorney, Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201
By:    Matthew Silverman, AUSA

**HURLEY, Senior District Judge:**

      Plaintiff Maria Gielarowski, as designated substitute party for Chester Gielarowski

("Plaintiff" or "Gielarowski"),[2] seeks judicial review of the determination of the Commissioner

---

[1] Nancy A. Berryhill is substituted pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

[2] After the ALJ's decision and after he requested review by the Appeals Council Chester Gielarowski passed away as the result of a gun shot wound; his mother was then substituted as a party to this proceeding.

of Social Security, following a hearing before an Administrative Law Judge ("ALJ"), that he was not under a disability as defined in the Social Security Act and therefore is not entitled to disability benefits. The ALJ found that Plaintiff had severe impairments consisting of status post chronic heart failure, chronic obstructive pulmonary disorder, diabetes mellitus and obesity. However, the ALJ further found that these impairments do not render him disabled. Specifically, she found that (1) Plaintiff had the residual functional capacity to perform light work except that he could occasionally lift twenty pounds and frequently lift ten pounds; sit for up to six hours, stand for approximately six hours, and walk up to two hours in an eight hour day, with normal breaks; occasionally climb stairs or ramps; never climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch and crawl; has unlimited ability to push and pull; and must avoid concentrated exposure to odors, fumes, dusts, gases and pulmonary irritants; and (2) was capable of performing past relevant work as a security guard or, in the alternative, considering that residual functional capacity, his age, education and work experience there are other jobs that exist in significant numbers in the national economy that Gielarowski also could perform. (Tr. 22-46.)

In support of his motion seeking judgment on the pleadings reversing the decision of the Commissioner, Gielarowski asserts that the ALJ improperly relied on the opinion of a non-treating and non-examining medical expert and the ALJ failed to properly evaluate his credibility. Having reviewed the record, the Court finds that the ALJ's rejection of Plaintiff's claim is supported by substantial evidence and that there was no legal error. Accordingly, Plaintiff's motion for judgment on the pleadings is denied and the cross-motion of the Commissioner for judgment on the pleadings is granted.

## BACKGROUND

I.   **Non-Medical Evidence**

Gielarowski was 52 years old at the time of the ALJ's decision and has a G.E.D. From November 2010 to February 2011, he worked as security guard, performing foot and car patrols; from May 2011 to September 2012, he worked as a machine operator which required him to lift up to 100 pounds.

According to his hearing testimony, he stopped working in September 2012 due to difficulties breathing, walking and manipulating stairs as he was status-post congestive heart failure, had diabetes mellitus, was obese, had chronic pulmonary disease and had sleep apnea. He treated his blood pressure and diabetes with medication and used a continuous positive airway pressure machine for his sleep apnea; he did not use insulin. His activities of daily living included showering and dressing himself, vacuuming and dusting, cooking meals such as lasagna and meatloaf, and shopping. He took care of his mother for the past ten years, performing such tasks as cooking, driving her to the doctor, helping her on stairs, and running errands; his ability to care for her did not change after his alleged onset date. He admitted he looked for work after his alleged onset date, including security work.

In a January 4, 2014 function report, Gielarowski stated that he prepared breakfast lunch and dinner, did household chores such as cleaning and vacuuming, made small household repairs, took care of feeding and cleaning the cages of his birds, drove his mother to the doctor, and went shopping for clothes and food. He reported needing help with lifting, pushing, shoveling and digging. He went hunting once or twice a year but it was "difficult to walk to the hunting spot" and he had to check his blood pressure before going. He could walk three to four

blocks and had to rest a minute or two before continuing.

## II.     Medical Evidence

The record contains the following medical evidence relevant to the arguments of the parties.

### A.     Treating Sources

In September 2012, Gielarowski was admitted to the hospital for congestive heart failure and atrial flutter. Cardiac catharization revealed in part severe mitral valve regurgitation. He underwent mitral valve replacement, a cryoablation maze procedure, and pacemaker implantation. Ten days after the mitral valve replacement his cardiologist noted he was in "excellent medical condition" and upon discharge advised him to avoid heavy lifting and driving until cleared and to increase his walking as tolerated.  Follow-up examinations by Dr. Glasser of Advanced Pulmonary Diagnostics, his primary care physician, were unremarkable. In a December 31, 2012 New York State Disability form Dr. Glasser stated that the date Plaintiff could return to work was indeterminate and he may require permanent disability. However, at an examination three months later, in March 2013, Dr. Glass noted Gielarowski was unemployed but "willing and able to return to work." At a June 2014 examination by his cardiologist, Gielarowski reported that his heart failure was currently well-controlled, complained of shortness of breath while carrying groceries or walking up stairs but denied fatigue, chest pain, dizziness, recent falls, or difficulty sleeping. The cardiologist reported normal examination findings. With respect to his heart there were no murmurs, rubs or gallops, lungs were clear to auscultation, and his extremities had no edema.

A post-surgical echocardiogram taken in November 2012 revealed a dilated left atrium,

and a bio-prosthetic valve with abnormal regurgitation and mild to moderate paravalvular leak.

**B.     Non-Treating Sources**

A consultative internal medicine examination of Gielarowski was conducted by Dr. Wolf in June 2013. On examination, Gielarowski's heart had a regular rhythm with no gallops, rubs, or murmurs; his chest was clear to auscultation and had normal percussion. Based on his medical history and the examination finding, Dr. Wolf opined that Gielarowski had no limitation sitting provided he could stretch from time to time, had moderate limitations in walking and standing, moderate to marked limitations in lifting, and marked limitation in climbing.

In June 2014, Dr. Malaret, who specializes in cardiology[3] and internal medicine, answered medical interrogatories regarding Gielarowski's impairments after reviewing the medical evidence in the record. Noting that Gielarowski's cardiovascular symptoms improved after his September 2012 surgeries, Dr. Malaret opined that he could lift, carry, and push and pull 10 pound frequently and 20 pounds occasionally, walk for up to four hours in an eight-hour day, never climb ladders, ropes or scaffolds, occasionally crawl, and had to avoid pulmonary irritants and extreme temperatures.

## DISCUSSION

**I.     Standard of Review**

In reviewing a decision of the Commissioner, a court may set aside a determination of the ALJ only if it is "based upon legal error or is not supported by substantial evidence." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (internal quotation marks and citation omitted).

---

[3] Although he has practiced cardiology for decades and held offices in various professional organization for cardiologists, Dr. Malaret is not board certified in cardiology.

"Substantial evidence is 'more than a mere scintilla,' and is 'such relevant evidence as [a] reasonable mind might accept as adequate to support a conclusion.'" *Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). An ALJ's findings may properly rest on substantial evidence even where he or she fails to "recite every piece of evidence that contributed to the decision, so long as the record 'permits [the Court] to glean the rationale of [his or her] decision.' " *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)). This remains true "even if contrary evidence exists." *Mackey v. Barnhart*, 306 F. Supp. 337, 340 (E.D.N.Y. 2004)

Furthermore, the findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive, 42 U.S.C. § 405(g), and thus, the reviewing court does not decide the case de novo. *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (internal quotation marks and citation omitted). Thus the only issue before the Court is whether the ALJ's finding that Plaintiff was not eligible for disability benefits was "based on legal error or is not supported by substantial evidence." *Rosa*, 168 F.3d at 77.

## II. The ALJ Properly Weighed the Medical Evidence and Her Determination is Supported by Substantial Evidence

Plaintiff contends that the ALj improperly relied upon the opinion of Dr. Malaret, a doctor who did not treat or examine Gielarowski. Further while the ALJ purported to give "good weight" to the opinion of Dr. Wolf, she did not adopt her restrictions which Plaintiff believes are more consistent with sedentary work.

Having reviewed the record, the Court finds that the ALJ properly weighed the medical

evidence and her determination is supported by substantial evidence.

Although an ALJ will consider medical opinions regarding a claimant's functioning, ultimately the ALJ must reach an RFC assessment based on the record as a whole. 20 C.F.R. § 404.1527(d)(2) ("Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner.") In evaluating medical opinions, an ALJ considers factors such as (1) whether there is a treatment relationship and if so its length, nature and extent; (2) whether there is an examining relationship; (3) consistency of the opinion with the entirety of the record; (4) whether the physician is a specialist; and (5) other factors that are brought to the attention of the Social Security Administration that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c); *see also Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Heagney-O'Hara v. Comm'r of Soc. Sec.*, 646 Fed. App'x 123, 126 (2d Cir. 2016).

While Dr. Malaret did not treat or examine Gielarowski, a fact explicitly recognized by the ALJ, his opinion is supported by objective evidence. For example, after implantation of his pacemaker, Gielarowski required only conservative care even though post-surgical echocardiograms continued to show some ventricular deficits. After his alleged onset date the physical examinations by his treating physicians reveal normal cardiac rate and rhythm, normal blood pressure, non-labored respirations, no murmurs, wheezing, rales, or rhonchi, and his lungs were clear to auscultations. His treating cardiologists opined that his symptoms were well controlled and recommended that Gielarowski exercise and be active. Also, Dr. Glasser opined that he was able to return to work. Gielarowski's activities of daily living, including that he was able to care for his mother in the same manner both before after and his alleged onset date,

provide further support for Dr. Malaret's opinion. As Dr. Malaret's opinion was consistent with the record as a whole, the ALJ committed no error in the weight she afforded it.

In considering Dr. Wolf's opinion, the ALJ adopted those portions that were consistent with the record as a whole, i.e., that Gielarowski has no limitation in sitting and only moderate limitations in walking and standing. To the extent that the ALJ rejected that portion of Dr. Wolf's opinion that Gielarowski had marked to moderate limitations in lifting and climbing, the ALJ appropriately cited record evidence to support her conclusion including the recommendation of treating cardiologists that Gielarowski exercise, treatment records and Gielarowski's statements that he helped his mother climb stairs and that his bedroom was on the second floor and he is able to go up and down the stairs himself.

In sum, the ALJ considered the relevant factors and supported her determination by substantial evidence in the record.

## II.     Plaintiff's Credibility was Properly Evaluated

Social Security regulations require an ALJ to consider a claimant's subjective testimony regarding his/her symptoms when analyzing whether the claimant is disabled. *See* 20 C.F.R. § 404.1529(a) (2011). In order to evaluate that subjective testimony, the ALJ must first determine "whether there is an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce" the claimed symptoms. *See* SSR 96–7p, 1996 WL 374186, at *2 (July 2, 1996). Second, the ALJ "must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." *Id*. Moreover, if a claimant's subjective evidence of pain is supported by objective medical evidence, it is entitled to "great weight."

*Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992) (internal quotation marks omitted).

If a claimant's symptoms suggest a greater severity of impairment than can be demonstrated by the objective medical evidence, additional factors must be considered. *See* 20 C.F.R. § 404.1529(c)(3). These include daily activities, the location, duration, frequency and intensity of symptoms, the type, effectiveness and side effects of medication, and other treatments or measures to relieve those symptoms. *Id*. An ALJ need not, however, explicitly recite the seven relevant factors. See *Chichocki v. Astrue*, 534 Fed. App'x 71, 75 (2d Cir. 2013). "The ALJ's decision 'must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the individual's statements and the reasons for that weight.' " *Id*. (quoting SSR 96–7p, 1996 WL 374186, at *2). A single conclusory statement that the claimant is not credible is not sufficient; the evidence of record must "permit [a court] to glean the rationale of an ALJ's decision." *Id*. (internal quotation marks omitted.)

Here, the ALJ cited considered Gielarowski's activities of daily living, including taking care of his 80 year old mother for the past ten years with no change in what he was able to do for her after his alleged onset date, performing a wide range of household chores, and hunting twice a year. She also considered (1) his treatment history, (2) that he had no problems with his pacemaker since it was implanted, (3) his doctor's statement that his symptoms were well controlled with his current regiment, (4) his treatment records showing normal cardiac rhythm, no murmurs, good air entry, and conservative treatment, and (5) his doctor's statement that he was willing and able to work. Notwithstanding Plaintiff's assertions to the contrary, the ALJ sufficiently explained her credibility determination. "It is the role of the Commissioner, not the

reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses.'" *Cichoki v. Astrue*, 534 F. App'x. 71, 75 (2d Cir. 2013) (summary order) (quoting *Carroll v. Secy. of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The ALJ properly identified specific record-based reasons for her credibility findings and the record evidence permits the Court "to glean the rationale of the ALJ's decision." *Id.*

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is denied, Defendant's cross-motion is granted, and the decision of the Commissioner is affirmed. The Clerk of the Court is directed to enter judgment in favor of Defendant and to close this case.

Dated: Central Islip, New York
      October 12, 2017                          /s/  Denis R. Hurley
                                                    Denis R. Hurley
                                                    United States District Judge